THIS OPINION HAS NO PRECEDENTIAL
 VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
 EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State,
 Respondent, 
 
 
 
 v.
 
 
 
 Edward Twyman, Appellant.
 
 
 

Appeal From Dorchester County
 Diane Schafer Goodstein, Circuit Court
Judge

Unpublished Opinion No. 2012-UP-312
Submitted March 1, 2012 – Filed May 16, 2012    

REVERSED

 
 
 
 Appellate Defender Breen Richard Stevens,
 of Columbia, for Appellant.
 John Benjamin Aplin, South Carolina Department of Probation, Parole and Pardon Services, of Columbia, for Respondent.
 
 
 

PER CURIAM:  Edward Twyman appeals the revocation of his
 participation in the Department of
 Probation, Parole and Pardon Services' (the Department) Community Supervision Program (CSP),
 arguing the circuit court erred in finding he willfully violated a condition of
 CSP by entering an exclusionary zone.  We reverse. 
FACTS/PROCEDURAL HISTORY
In September 2000, Twyman was
 sentenced to serve twelve years in prison after pleading guilty to
 second-degree criminal sexual conduct with a minor.  In July 2010, Twyman was
 released after serving eighty-five percent of his sentence.  Thereafter, Twyman
 was admitted into CSP, as required by section 24-21-560(A) of the South
 Carolina Code (2007).  While in CSP, Twyman was required to wear a tracking
 device and to comply with the Department's Standard Sex Offender Conditions and the CSP Certificate-Conditions of Supervision.  These conditions specified that Twyman was not
 permitted to "enter into, travel past, or loiter near" the victim's
 residence or workplace.  Furthermore, Twyman was required to adhere to the
 following conditions: "I shall
 follow the advice and instructions of my agent[,] and I agree to comply with
 any further conditions imposed by the Department or its Agents."  
Upon his release from prison,
 Twyman moved to a boarding house in Summerville.  One month after Twyman
 entered CSP, he was arrested after he entered an "exclusionary zone"
 surrounding the victim's residence.  Twyman's extended family and the victim
 live in the same vicinity of Ridgeville.  The tracking device alerted Twyman's Probation
 Agent, Christine Debello, to Twyman's presence in the exclusionary zone.  Agent
 Debello immediately issued an arrest warrant and proceeded to Twyman's
 Summerville home, where she arrested him the same day.  Twyman told Agent
 Debello that when the incident occurred, he was a passenger in a car driven by
 his aunt's boyfriend; they had stopped at a house in the proximity of the
 victim's residence.  The tracking device indicated that Twyman had entered the prohibited
 area surrounding the victim's residence at 12:30 in the afternoon, and he had remained
 in the area for approximately eleven minutes.  
In November 2010, Twyman
 appeared before the circuit court for a CSP revocation hearing.  Twyman's
 arrest warrant stated that he had violated CSP by his "failure to refrain
 from having contact with the victim."  At the hearing, Agent Debello explained
 that an exclusionary zone of 279.60 yards had been established around the
 victim's residence.  Agent Debello testified that although she had told Twyman to
 stay away from the victim's house, she had not informed him of the radius of
 the exclusionary zone because "he could calculate the area and be right
 outside of the zone, and possibly have contact with the victim."  Agent Debello
 had instructed Twyman: "You need to stay away from the victim's house—that
 area.  If your family wants to see you to help you out . . . then they need to
 come to Summerville to see you."  
Agent Debello testified that she
 had verified Twyman did not go to the victim's home; instead, he "was at a
 house in close proximity to the victim's residence."  Although Twyman
 entered the exclusionary zone, he did not attempt to visit the victim's residence
 or contact the victim.  Twyman had no other CSP violations.  
Twyman's counsel argued that Twyman
 knew he was not to contact the victim or go to the victim's residence. 
 However, because Twyman was unaware of the exact location of the exclusionary
 zone, his inadvertent entry into the area was not a "willful"
 violation of CSP.  
Following the hearing, the
 circuit court found Twyman had willfully violated a condition of his CSP, and it
 sentenced him to serve one year in prison.  This appeal followed. 
ISSUE ON APPEAL
Did the circuit court err in
 finding Twyman willfully violated a condition of his CSP when he ventured into
 an exclusionary zone?
LAW/ANALYSIS
Twyman contends that because
 he was not aware of the precise location of the exclusionary zone, his entry
 into this zone was not a "willful" violation of the terms of his CSP. 
 Accordingly, Twyman asserts the circuit court abused its discretion in finding
 that he willfully violated a condition of CSP.  Twyman argues that his mere
 presence in the prohibited zone was insufficient to support a finding that his
 entry into the zone was a "voluntary and intentional act done in
 consciousness."  Conversely, the State argues the evidence supports the
 circuit court's finding that Twyman willfully entered the exclusionary zone,
 thereby violating a condition of CSP.  
When the Department
 determines that a prisoner has committed a violation warranting revocation of
 CSP, "a probation agent must initiate a proceeding in General Sessions
 Court.  The proceeding must be initiated pursuant to a warrant or a citation
 issued by a probation agent setting forth the violations of [CSP]."  S.C.
 Code Ann. § 24-21-560(C) (2007).  
If the
 court determines that a prisoner has willfully violated a term or condition of [CSP],
 the court may impose any other terms or conditions considered appropriate and
 may continue the prisoner on community supervision, or the court may revoke the
 prisoner's community supervision and impose a sentence of up to one year for
 violation of [CSP].  
Id.
"Both the decision of
 whether an alleged violation was willful and the decision of whether to revoke
 community supervision are discretionary.  The trial court will not be reversed
 unless the appellant has shown an abuse of that discretion."  State v.
 Garrard, 390 S.C. 146, 151, 700 S.E.2d 269, 272 (Ct. App. 2010). 
 "Where there is any evidence to support the court's factual findings,
 there is no abuse of discretion."  Id.
In Garrard, the
 defendant violated a condition of his CSP when he drove within 1,000 feet of a
 school zone.  Garrard testified that he was unaware that he had entered the
 exclusionary zone.  Id. The circuit court found Garrard's act was not a
 willful violation of CSP, and this court affirmed.  Id.  In affirming
 the circuit court's ruling, this court construed the term "willfully,"
 as used in section 24-21-560(C) of the South Carolina Code, as requiring the
 state to prove either:

 (1) a
 voluntary and intentional act done with consciousness that the act is a
 violation of a term of the community supervision program, or (2) the voluntary
 and intentional failure to do something known to be required by a term of
 community supervision.

Garrard, 390 S.C. at 150, 700 S.E.2d at 272.
We find the court's holding
 in Garrard to be instructive.  Agent Debello acknowledged that Twyman
 was not aware of the specific dimensions of the exclusionary zone around the
 victim's residence.  The State presented no evidence to suggest that Twyman
 knowingly or willfully entered the exclusionary zone, or that he made any
 attempt to contact the victim.  In our view, the agent's instruction "not to
 go near" the victim's residence or workplace was too vague to hold Twyman
 responsible for committing "a
 voluntary and intentional act done with consciousness that the act is a
 violation of a term of the [CSP]."  See
 id.  As a result, we hold that Twyman's mere presence in the exclusionary
 zone—the boundary of which he was unaware—was insufficient to support the
 revocation of CSP. 
CONCLUSION
For the foregoing reasons,
 the circuit court's order is 
REVERSED.
PIEPER,
 KONDUROS, and GEATHERS, JJ., concur.